**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| VERIFONE, INC., <br><br>                 Plaintiff, <br><br> vs. <br><br> NEAR FIELD ELECTRONICS LLC, <br><br>                 Defendant. | Civil Action No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff VeriFone, Inc. ("Plaintiff" or "Verifone"), by and through its undersigned counsel, for its Complaint against Near Field Electronics LLC ("Defendant" or "NFE"), alleges as follows:

### INTRODUCTION

1. Verifone brings this action to stop NFE's efforts to frustrate its business by making unfounded allegations of infringement against Verifone's customers based on Verifone's products, to the detriment and damage of Verifone. NFE's tactics include the filing of meritless lawsuits against Verifone's customers based on Verifone's products and threatening to file over two hundred (200) additional lawsuits. NFE's assertions are baseless as four of the asserted patents are directed to Universal Serial Bus (USB) technologies and the fifth asserted patent is directed to "through current" detection, none of which relates to Verifone's products. Moreover, the claims of NFE's patents are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

2. As a result of NFE's assertions of its patent rights against Verifone's customers and Verifone's accused products and Verifone's belief in its right to engage in its business activities related to Verifone's accused products without a license to NFE's patents, and as a result of NFE's

threat of filing over two hundred (200) additional lawsuits against other customers of Verifone, an actual controversy exists between Verifone and NFE as to whether Verifone and Verifone's accused products infringe NFE's asserted patents. Accordingly, Verifone seeks a declaration from this Court that Verifone's accused products and use of such products by Verifone's customers do not infringe NFE's asserted patents and that NFE's asserted patents are invalid.

<u>**PARTIES**</u>

3.      Verifone is a global FinTech leader providing end-to-end payment and commerce solutions to retail providers, financial institutions, distribution partners, and merchants of all types and sizes around the world. Verifone's world-class products consist of point-of-sale electronic payment devices that run their own operating systems, security and encryption software, and certified payment software. Verifone's platform is built on over four decades of innovation and uncompromised security. Consumers trust and recognize Verifone for its universal footprint of payment devices and services in more than 150 countries, and Verifone has earned a reputation as a trusted producer, manufacturer, and supplier of payment solutions. Among its product offerings, Verifone's payment terminals have included, for example, the M400, MX915, and MX925 payment terminals:

| Verifone M400 | Verifone MX915 | Verifone MX925 |
|:---:|:---:|:---:|
|  |  |  |

4.      Verifone is a corporation organized under the laws of the State of Delaware with a registered address at 251 Little Falls Drive, Wilmington, Delaware 19808. Verifone's corporate headquarters are located at 817 Broadway, Suite 1100, New York, NY 10003.

5.      Upon information and belief, NFE is a non-practicing entity and a limited liability company organized under the laws of the State of Texas. According to records of the State of Texas Secretary of State, copies attached as Exhibits A-C, NFE has a registered address at 1526 Gilpin Avenue, Wilmington, Delaware 19806, and John Meli is listed as the sole Manager of NFE with an office address at 1526 Gilpin Avenue, Wilmington, Delaware 19806.

## NATURE OF THE CASE

6.      Upon information and belief, NFE contends that it is the owner of U.S. Patent No. 6,691,201 (the "'201 patent"), U.S. Patent No. 6,742,071 (the "'071 patent"), U.S. Patent No. 6,959,350 (the "'350 patent"), U.S. Patent No. 6,996,727 (the "'727 patent"), and U.S. Patent No. 7,373,531 (the "'531 patent") (collectively, "the Asserted Patents").

7.      The '201 patent, entitled "Dual Mode USB-PS/2 Device," expired on or about January 31, 2022. A copy of the '201 patent is attached as Exhibit 1.

8.      The '071 patent, entitled "Real-Time I/O Processor Used To Implement Bus Interface Protocols," expired on or about November 28, 2021. A copy of the '071 patent is attached as Exhibit 2.

9.      The '350 patent, entitled "Configurable USB Interface With Virtual Register Architecture," expired on or about September 18, 2022. A copy of the '350 patent is attached as Exhibit 3.

10.    The '727 patent, entitled "Power Supply For Universal Serial Bus Interface With Programmable Bus Pullup Resistor," expired on or about April 14, 2022. A copy of the '727 patent is attached as Exhibit 4.

11.    The '531 patent, entitled "Signal Detection Method, Frequency Detection Method, Power Consumption Control Method, Signal Detecting Device, Frequency Detecting Device, Power Consumption Control Device and Electronic Apparatus," will expire on or about March 19, 2026. A copy of the '531 patent is attached as Exhibit 5.

12.    Upon information and belief, NFE contends that it owns all substantial rights related to the Asserted Patents, including the exclusive right to enforce, sue, and recover damages for past infringement.

13.    NFE has alleged in multiple complaints filed in the U.S. District Court for the Eastern District of Texas that credit card reader devices (the "Accused Products") equipped with an NXP PN512 Front-End (the "PN512") and sold by Verifone to its customers infringe at least one claim of each of the Asserted Patents.

14.    NFE's infringement allegations have harmed and continue to harm Verifone.

15.    Verifone seeks a declaratory judgment that neither Verifone nor the use of the Accused Products by others infringe any claim of the Asserted Patents.

16.    This relief is necessary because NFE has filed complaints in multiple lawsuits, as seen above, alleging that many of Verifone's customers have infringed the Asserted Patents by using the Accused Products. Additionally, NFE has informed Verifone that it intends to file over two hundred (200) additional lawsuits against other customers of Verifone

17.    To date, NFE has filed at least ten lawsuits in the U.S. District Court for the Eastern District of Texas alleging that Verifone's customers infringed the Asserted Patents because they used the Accused Products. These cases include:

i.    *Near Field Electronics LLC v. CVS Pharmacy, Inc.*, Case No. 1:25-cv-00323-MJT (a copy of the complaint is attached as Exhibit 6 and copies of the accompanying chart charts are attached as Exhibit 7);

ii.    *Near Field Electronics LLC v. Enterprise Holdings, Inc. et al.*, Case No. 4:25-cv-00665-RWS (a copy of the complaint is attached as Exhibit 8 and copies of the accompanying chart charts are attached as Exhibit 9);

iii.    *Near Field Electronics LLC v. RaceTrac, Inc.*, Case No. 4:25-cv-00674-RWS (a copy of the complaint is attached as Exhibit 10 and copies of the accompanying chart charts are attached as Exhibit 11);

iv.    *Near Field Electronics LLC v. Levi Strauss & Co.*, Case No. 4:25-cv-00710-RWS (a copy of the complaint is attached as Exhibit 12 and copies of the accompanying chart charts are attached as Exhibit 13);

v.    *Near Field Electronics LLC v. Panda Express, Inc.*, Case No. 4:25-cv-00715-RWS (a copy of the complaint is attached as Exhibit 14 and copies of the accompanying chart charts are attached as Exhibit 15);

vi.    *Near Field Electronics LLC v. Urban Outfitters, Inc.*, Case No. 4:25-cv-00716-RWS (a copy of the complaint is attached as Exhibit 16 and copies of the accompanying chart charts are attached as Exhibit 17);

vii.    *Near Field Electronics LLC v. The Pep Boys--Manny, Moe & Jack LLC*, Case No. 4:25-cv-00912-RWS (a copy of the complaint is attached as Exhibit 18 and copies of the accompanying chart charts are attached as Exhibit 19);

viii.    *Near Field Electronics LLC v. Spencer Gifts LLC a/k/a Spencer Gifts Online, LLC*, Case No. 4:25-cv-00913-RWS (a copy of the complaint is attached as Exhibit 20 and copies of the accompanying chart charts are attached as Exhibit 21);

ix.    *Near Field Electronics LLC v. Trader Joes Company et al.*, Case No. 4:25-cv-00914-RWS (a copy of the complaint is attached as Exhibit 22 and copies of the accompanying chart charts are attached as Exhibit 23); and

x.    *Near Field Electronics LLC v. Vans, Inc.*, Case No. 4:25-cv-00915-RWS (a copy of the complaint is attached as Exhibit 24 and copies of the accompanying chart charts are attached as Exhibit 25).

Collectively, the above cases are referred to herein as the "Verifone Customer Lawsuits."

18.    In the Verifone Customer Lawsuits, NFE alleged that the '201 patent "is directed to an integrated circuit for a peripheral device capable of automatically selecting and operating in a plurality of signaling protocols using a single set of I/O pins." *See*, *e.g.*, Exhibit 6 at ¶ 10, Exhibit 8 at ¶ 11, Exhibit 10 at ¶ 10, Exhibit 12 at ¶ 10, Exhibit 14 at ¶ 10, Exhibit 16 at ¶ 10, Exhibit 18 at ¶ 10, Exhibit 20 at ¶ 10, Exhibit 22 at ¶ 11, and Exhibit 24 at ¶ 10.

19.    In the Verifone Customer Lawsuits, NFE alleged that the '071 patent "is directed to a real-time input/output (I/O) processor circuit architecture used to implement bus interface protocols." *See*, *e.g.*, Exhibit 6 at ¶ 15, Exhibit 8 at ¶ 16, Exhibit 10 at ¶ 15, Exhibit 12 at ¶ 15, Exhibit 14 at ¶ 15, Exhibit 16 at ¶ 15, Exhibit 18 at ¶ 15, Exhibit 20 at ¶ 15, Exhibit 22 at ¶ 16, and Exhibit 24 at ¶ 15.

20.     In the Verifone Customer Lawsuits, NFE alleged that the '350 patent "is directed to a configurable bus interface controller that uses a hardware description language (HDL)-based configuration package to generate configuration circuitry for different USB endpoint configurations." *See*, *e.g.*, Exhibit 6 at ¶ 19, Exhibit 8 at ¶ 20, Exhibit 10 at ¶ 19, Exhibit 12 at ¶ 19, Exhibit 14 at ¶ 19, Exhibit 16 at ¶ 19, Exhibit 18 at ¶ 19, Exhibit 20 at ¶ 19, Exhibit 22 at ¶ 20, and Exhibit 24 at ¶ 19.

21.     In the Verifone Customer Lawsuits, NFE alleged that the '727 patent "is directed to a power supply architecture for a bus interface that includes a programmable bus pullup resistor." *See*, *e.g.*, Exhibit 6 at ¶ 24, Exhibit 8 at ¶ 25, Exhibit 10 at ¶ 24, Exhibit 12 at ¶ 24, Exhibit 14 at ¶ 24, Exhibit 16 at ¶ 24, Exhibit 18 at ¶ 24, Exhibit 20 at ¶ 24, Exhibit 22 at ¶ 25, and Exhibit 24 at ¶ 24.

22.     In the Verifone Customer Lawsuits, NFE alleged that the '531 patent "is directed to methods and devices for detecting signals, signal frequency, and power consumption status in an electronic device by monitoring through current in a circuit" *See*, *e.g.*, Exhibit 6 at ¶ 28, Exhibit 8 at ¶ 29, Exhibit 10 at ¶ 28, Exhibit 12 at ¶ 28, Exhibit 14 at ¶ 28, Exhibit 16 at ¶ 28, Exhibit 18 at ¶ 28, Exhibit 20 at ¶ 28, Exhibit 22 at ¶ 29, and Exhibit 24 at ¶ 28.

23.     NFE attached to each complaint in each of the Verifone Customer Lawsuits substantively similar claim charts that NFE alleged include "[e]xemplary infringement analysis showing infringement of claim 14 of the '201 patent." *See*, *e.g.*, Exhibit 6 at ¶ 32, Exhibit 8 at ¶ 33, Exhibit 10 at ¶ 32, Exhibit 12 at ¶ 32, Exhibit 14 at ¶ 32, Exhibit 16 at ¶ 32, Exhibit 18 at ¶ 32, Exhibit 20 at ¶ 32, Exhibit 22 at ¶ 33, and Exhibit 24 at ¶ 32.

24.     NFE attached to each complaint in each of the Verifone Customer Lawsuits substantively similar claim charts that NFE alleged include "[e]xemplary infringement analysis

showing infringement of claim 15 of the '071 patent." *See*, *e.g.*, Exhibit 6 at ¶ 37, Exhibit 8 at ¶ 38, Exhibit 10 at ¶ 37, Exhibit 12 at ¶ 37, Exhibit 14 at ¶ 37, Exhibit 16 at ¶ 37, Exhibit 18 at ¶ 37, Exhibit 20 at ¶ 37, Exhibit 22 at ¶ 38, and Exhibit 24 at ¶ 37.

25.    NFE attached to each complaint in each of the Verifone Customer Lawsuits substantively similar claim charts that NFE alleged include "[e]xemplary infringement analysis showing infringement of claim 10 of the '350 patent." *See*, *e.g.*, Exhibit 6 at ¶ 42, Exhibit 8 at ¶ 43, Exhibit 10 at ¶ 42, Exhibit 12 at ¶ 42, Exhibit 14 at ¶ 42, Exhibit 16 at ¶ 42, Exhibit 18 at ¶ 42, Exhibit 20 at ¶ 42, Exhibit 22 at ¶ 43, and Exhibit 24 at ¶ 42.

26.    NFE attached to each complaint in each of the Verifone Customer Lawsuits substantively similar claim charts that NFE alleged include "[e]xemplary infringement analysis showing infringement of claim 18 of the '727 patent." *See*, *e.g.*, Exhibit 6 at ¶ 47, Exhibit 8 at ¶ 48, Exhibit 10 at ¶ 47, Exhibit 12 at ¶ 47, Exhibit 14 at ¶ 47, Exhibit 16 at ¶ 47, Exhibit 18 at ¶ 47, Exhibit 20 at ¶ 47, Exhibit 22 at ¶ 48, and Exhibit 24 at ¶ 47.

27.    NFE attached to each complaint in each of the Verifone Customer Lawsuits substantively similar claim charts that NFE alleged include "[e]xemplary infringement analysis showing infringement of claim 2 of the '531 patent." *See*, *e.g.*, Exhibit 6 at ¶ 52, Exhibit 8 at ¶ 53, Exhibit 10 at ¶ 52, Exhibit 12 at ¶ 52, Exhibit 14 at ¶ 52, Exhibit 16 at ¶ 52, Exhibit 18 at ¶ 52, Exhibit 20 at ¶ 52, Exhibit 22 at ¶ 53, and Exhibit 24 at ¶ 52.

28.    In the claim charts attached to the complaints in the Verifone Customer Lawsuits, NFE identified the Accused Products as Verifone's M400, MX915, and MX925 card readers. *See*, *e.g.*, Exhibit 7, Exhibit 9, Exhibit 11, Exhibit 13, Exhibit 15, Exhibit 17, Exhibit 19, Exhibit 21, Exhibit 23, and Exhibit 25.

29.    Each of the claim charts NFE attached to the complaints in the Verifone Customer Lawsuits purports to show how the Accused Products infringed the claims of the Asserted Patents. *See*, *e.g.*, Exhibit 7, Exhibit 9, Exhibit 11, Exhibit 13, Exhibit 15, Exhibit 17, Exhibit 19, Exhibit 21, Exhibit 23, and Exhibit 25.

30.    Verifone has entered into indemnification agreements with several of its customers and has agreed to indemnify and defend the Verifone customers named as defendants in the Verifone Customer Lawsuits with respect to Verifone devices accused by NFE.

31.    In its complaints and accompanying claim charts, NFE specifically and repeatedly identifies Verifone's M400, MX915 and MX925 devices as allegedly infringing the Asserted Patents and never identifies any of the customers' own products. Every claim chart provided by NFE in the Verifone Customer Lawsuits includes photographs of Verifone's devices and identifies the Accused Products according to Verifone's model numbers. *See*, *e.g.*, Exhibit 7, Exhibit 9, Exhibit 11, Exhibit 13, Exhibit 15, Exhibit 17, Exhibit 19, Exhibit 21, Exhibit 23, and Exhibit 25. In doing so, NFE has made implicit assertions of infringement against Verifone. Thus, Verifone— not Verifone's customers who are named as defendants in the Verifone Customer Lawsuits—is the real party-in-interest with respect to the Accused Products.

32.    Neither Verifone, nor the Accused Products, nor Verifone's customers, directly or indirectly infringe the Asserted Patents. Verifone contends that it has and had previously the right to make, use, sell, and/or offer to sell in the United States and import into the United States the Accused Products without need of licenses to the Asserted Patents.

33.    Verifone has used, serviced, leased, and sold the Accused Products during the term of each of the Asserted Patents. As a result of the Verifone Customer Lawsuits against the Accused Products, with NFE expressly pleading that its infringement allegations were "exemplary" and

"necessarily preliminary," and NFE expressly reserving "all rights to amend, supplement and modify" its infringement allegations in all of its Complaints, Verifone has a reasonable belief that it may be sued by NFE for direct infringement of all of the Asserted Patents.

34.    After the filing of the Verifone Customer Lawsuits, Verifone engaged in discussions with NFE in an attempt to resolve the assertions of infringement by NFE against Verifone's customers and the Accused Products. During these discussions, NFE shared offers with Verifone to resolve its patent infringement claims against the Verifone Customers and license all patents currently owned by NFE to the Verifone Customers. During these discussions, Verifone explained in detail why the Accused Products did not infringe the Asserted Patents and specifically discussed technical specifications with respect to NFE's infringement allegations. Verifone also discussed invalidity of the Asserted Patents and provided invalidating prior art to NFE. However, NFE refused to dismiss the Verifone Customer Lawsuits and informed Verifone that following the discussions between the parties, NFE intended to file over ***two hundred (200) additional lawsuits*** against other customers of Verifone.

35.    As a result of NFE's assertions of its patent rights against the Accused Products and Verifone's customers and Verifone's belief in its right to engage in its business activities related to the Accused Products without a license to the Asserted Patents, and as a result of NFE's threat of filing over ***two hundred (200) additional lawsuits*** against other customers of Verifone, a substantial, continuing, and justiciable controversy exists between Verifone and NFE.

## JURISDICTION AND VENUE

36.    This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

37.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201(a), and 2202.

38.    This Court has personal jurisdiction over NFE because NFE resides in this district. According to records of the State of Texas Secretary of State, NFE has a registered address at 1526 Gilpin Avenue, Wilmington, Delaware 19806, and John Meli is listed as the sole Manager of NFE with an office address at 1526 Gilpin Avenue, Wilmington, Delaware 19806.

39.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because NFE resides in this district.

## <u>COUNT I</u>

### **(Declaratory Judgment of Non-Infringement of the '201 Patent)**

40.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 39 above and incorporates them herein by reference.

41.    In the Verifone Customer Lawsuits, NFE asserted that the Accused Products infringe at least claim 14 of the '201 patent. Thus, there is an actual controversy between Verifone and NFE as to Verifone's alleged infringement of the '201 patent.

42.    None of the Accused Products infringe or have infringed any of the claims of the '201 patent.

43.    Verifone has not infringed any claim of the '201 Patent, directly or indirectly, literally or under the doctrine of equivalents, by manufacturing, providing, supplying, using, distributing, selling, offering to sell, and/or importing the Accused Products.

44.    None of Verifone's employees, contractors, agents, customers, or any other entity or individual associated with Verifone has ever used any of the Accused Products in a manner that infringes any claim of the '201 Patent.

45.    Exemplary Claim 13 of the '201 patent recites:

| Limitation | Claim Language |
|---|---|
| 13 [Preamble] | 13. An apparatus comprising: |
| 13[a] | means for detecting a signaling protocol of a connected bus; |
| 13[b] | means for communicating in a plurality of signaling protocols; and |
| 13[c] | means for automatically configuring said communication means to one of said plurality of signaling protocols in response to said detected signaling protocol of said connected bus, wherein (i) said detecting means, communicating means, and configuring means comprise a single integrated circuit package and (ii) each of said selected protocols operate over said connected bus through a single set of pins. |

46.    By way of example, the Accused Products do not satisfy at least limitations 13[a] and 13[c] of Claim 13 of the '201 patent because the signaling protocol is not detected by the PN512 as alleged by NFE in its claim charts. *See*, *e.g.*, Exhibit 7 at pages 6-7, Exhibit 9 at pages 6-7, Exhibit 11 at pages 6-7, Exhibit 13 at pages 5-7, Exhibit 15 at pages 6-7, Exhibit 17 at pages 8-9, Exhibit 19 at pages 6-7, Exhibit 21 at pages 5-6, Exhibit 23 at pages 5-7, and Exhibit 25 at pages 5-7.[1] Indeed, the signaling protocol is never detected by the PN512, in contrast to limitations 13[a] and 13[c] of Claim 13 which require detection of a signaling protocol of a bus connected to an integrated circuit and then configuring said communication means in response to the detected signaling protocol.

47.    Additionally, the Accused Products do not satisfy limitation 13[b] of Claim 13 of the '201 patent requiring communicating "in a plurality of signaling protocols." The PN512 communicates with internal components of the Accused Products according to only one signaling protocol, rather than according to two or more signaling protocols as specifically required by limitation 13[b] of Claim 13.

---

[1] Each of NFE's "Exhibit[s] A-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '201 patent.

48.     All the claims of the '201 patent either recite a limitation corresponding to or similar to limitations 13[a], 13[b], and 13[c] of Claim 13, or depend from a claim that recites these limitations. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '201 patent for at least the same reason described above for Claim 13.

49.     Further exemplary Claim 14 of the '201 patent recites:

| Limitation | Claim Language |
|---|---|
| 14 [Preamble] | A method for automatically selecting a signaling protocol for communicating with a host comprising the steps of: |
| 14[a] | (A) detecting a signaling protocol of a bus connected to an integrated circuit that operates in a plurality of signaling protocols; and |
| 14[b] | (B) configuring said integrated circuit to communicate in one of said plurality of signaling protocols in response to said detected signaling protocol of said connected bus, wherein each of said selected protocols operate over said connected bus through a single set of pins. |

50.     By way of example, the Accused Products do not satisfy at least limitations 14[a] and 14[b] of Claim 14 of the '201 patent because the signaling protocol is not detected by the PN512 as alleged by NFE in its claim charts. *See*, *e.g.*, Exhibit 7 at pages 6-7, Exhibit 9 at pages 6-7, Exhibit 11 at pages 6-7, Exhibit 13 at pages 5-7, Exhibit 15 at pages 6-7, Exhibit 17 at pages 8-9, Exhibit 19 at pages 6-7, Exhibit 21 at pages 5-6, Exhibit 23 at pages 5-7, and Exhibit 25 at pages 5-7.[2] Indeed, the signaling protocol is never detected by the PN512, in contrast to limitations 14[a] and 14[b] of Claim 14 which require detection of a signaling protocol of a bus connected to an integrated circuit and then configuring the integrated circuit in response to the detected signaling protocol.

---

[2] Each of NFE's "Exhibit[s] A-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '201 patent.

51. Additionally, the Accused Products do not satisfy limitation 14[a] of Claim 14 of the '201 patent requiring operation of "a plurality of signaling protocols." The PN512 communicates with internal components of the Accused Products according to only one signaling protocol, rather than according to two or more signaling protocols as specifically required by limitation 14[a] of Claim 14.

52. All the claims of the '201 patent either recite a limitation corresponding to or similar to limitations 14[a] and 14[b] of Claim 14, or depend from a claim that recites these limitations. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '201 patent for at least the same reason described above for Claim 14.

53. Based on the foregoing, an actual controversy has arisen and now exists between Verifone and NFE regarding Verifone's alleged infringement of the '201 patent that warrants issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that Verifone has not infringed any claim of the '201 Patent.

54. A judicial declaration is necessary and appropriate so that Verifone may ascertain its rights regarding the '201 patent, including its rights to manufacture, use, offer to sell, sell, and/or import the Accused Products.

55. Verifone is entitled to a declaration that it has not and does not infringe any claim of the '201 patent. Accordingly, Verifone requests a judgment declaring that the claims of the '201 patent are not infringed by any of the Accused Products as NFE alleges.

56. Absent a declaration that Verifone does not infringe the '201 patent, NFE will continue to wrongfully assert the '201 patent against Verifone customers and the Accused Products and thereby cause Verifone irreparable harm and injury.

## COUNT II

### (Declaratory Judgment of Non-Infringement of the '071 Patent)

57.     Verifone restates and realleges the allegations set forth in paragraphs 1 through 56 above and incorporates them herein by reference.

58.     In the Verifone Customer Lawsuits, NFE asserted that the Accused Products infringe at least claim 15 of the '071 patent. Thus, there is an actual controversy between Verifone and NFE as to Verifone's alleged infringement of the '071 patent.

59.     None of the Accused Products infringe or have infringed any of the claims of the '071 patent.

60.     Verifone has not infringed any claim of the '071 patent, directly or indirectly, literally or under the doctrine of equivalents, by manufacturing, providing, supplying, using, distributing, selling, offering to sell, and/or importing the Accused Products.

61.     None of Verifone's employees, contractors, agents, customers, or any other entity or individual associated with Verifone has ever used any of the Accused Products in a manner that infringes any claim of the '071 patent.

62.     Exemplary Claim 9 of the '071 patent recites:

| Limitation | Claim Language |
|---|---|
| 9 [Preamble] | 9. A circuit comprising: |
| 9[a] | a memory configured to generate a plurality of first control signals in response to a state signal; |
| 9[b] | a first circuit configured to generate a second control signal in response to at least one of a read signal and a write signal; and |
| 9[c] | an interface circuit configured to (i) interface to an external bus, (ii) drive at least one output control signal of said first control signals to said external bus, (iii) generate said state signal conveying one of a plurality of states in response to (a) at least one internal control signal of said first control signals, (b) said second control signal and (c) an input signal received from said external bus and (iv) generate a signal in response to at least one of said first control signals. |

63.     By way of example, the Accused Products do not satisfy at least limitation 9[c] of Claim 9 of the '071 patent. The PN512 does not drive an output control signal onto an external bus. In its claim charts, NFE alleges that the PN512 propagates interrupt requests to an IRQ pin when the PN512 transitions to a receiving state or a waiting state. *See*, *e.g.*, Exhibit 7 at pages 18-21, Exhibit 9 at pages 19-22, Exhibit 11 at pages 19-22, Exhibit 13 at pages 18-21, Exhibit 15 at pages 19-22, Exhibit 17 at pages 23-26, Exhibit 19 at pages 19-24, Exhibit 21 at pages 18-23, Exhibit 23 at pages 19-24, and Exhibit 25 at pages 19-24.[3] In contrast to the allegations of the claim charts, these interrupt requests are instead triggered by a timer or an alert, rather than the PN512 transitioning to a receiving state or a waiting state.

64.     Additionally, NFE fails to show the interrupt request as being driven onto an external bus. Rather than identifying an external bus receiving the interrupt request, NFE merely identifies the IRQ pin of the PN512 in its claim charts. *See*, *e.g.*, Exhibit 7 at page 21, Exhibit 9 at page 22, Exhibit 11 at page 22, Exhibit 13 at page 21, Exhibit 15 at page 22, Exhibit 17 at page 26, Exhibit 19 at page 24, Exhibit 21 at page 23, Exhibit 23 at page 24, and Exhibit 25 at page 24.[4] The claim charts do not show the IRQ pin as connected to an external bus, and NFE does not provide any evidence of the IRQ pin being connected to an external bus when the PN512 is installed in the Accused Products.

65.     All the claims of the '071 patent either recite a limitation corresponding to or similar to limitation 9[c] of Claim 9, or depend from a claim that recites this limitation. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed.

---

[3] Each of NFE's "Exhibit[s] B-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '071 patent.
[4] Each of NFE's "Exhibit[s] B-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '071 patent.

Therefore, Verifone does not infringe and has not infringed any claim of the '071 patent for at least the same reason described above for Claim 9.

66.    Further exemplary Claim 15 of the '071 patent recites:

| Limitation | Claim Language |
|---|---|
| 15 [Preamble] | A method for providing an interface to an external bus, comprising the steps of: |
| 15[a] | (A) generating a plurality of first control signals in response to a current state of a processor; |
| 15[b] | (B) progressing to a next state based on said current state, at least one internal control signal of said first control signals and an input signal received from said external bus; |
| 15[c] | (C) driving at least one output control signal of said first controls signals onto said external bus; and |
| 15[d] | (D) updating said current state to said next state. |

67.    By way of example, the Accused Products do not satisfy at least limitation 15[c] of Claim 15 of the '071 patent. The PN512 does not drive an output control signal onto an external bus. In its claim charts, NFE alleges that the PN512 propagates interrupt requests to an IRQ pin when the PN512 transitions to a receiving state or a waiting state. *See*, *e.g.*, Exhibit 7 at pages 18-21, Exhibit 9 at pages 19-22, Exhibit 11 at pages 19-22, Exhibit 13 at pages 18-21, Exhibit 15 at pages 19-22, Exhibit 17 at pages 23-26, Exhibit 19 at pages 19-24, Exhibit 21 at pages 18-23, Exhibit 23 at pages 19-24, and Exhibit 25 at pages 19-24.[5] In contrast to the allegations of the claim charts, these interrupt requests are instead triggered by a timer or an alert, rather than the PN512 transitioning to a receiving state or a waiting state.

68.    Additionally, NFE fails to show the interrupt request as being driven onto an external bus. Rather than identifying an external bus receiving the interrupt request, NFE merely identifies the IRQ pin of the PN512 in its claim charts. *See*, *e.g.*, Exhibit 7 at page 21, Exhibit 9 at

---

[5] Each of NFE's "Exhibit[s] B-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '071 patent.

page 22, Exhibit 11 at page 22, Exhibit 13 at page 21, Exhibit 15 at page 22, Exhibit 17 at page 26, Exhibit 19 at page 24, Exhibit 21 at page 23, Exhibit 23 at page 24, and Exhibit 25 at page 24.[6] The claim charts do not show the IRQ pin as connected to an external bus, and NFE does not provide any evidence of the IRQ pin being connected to an external bus when the PN512 is installed in the Accused Products.

69.    All the claims of the '071 patent either recite a limitation corresponding to or similar to limitation 15[c] of Claim 15, or depend from a claim that recites this limitation. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '071 patent for at least the same reason described above for Claim 15.

70.    Based on the foregoing, an actual controversy has arisen and now exists between Verifone and NFE regarding Verifone's alleged infringement of the '071 patent that warrants issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that Verifone has not infringed any claim of the '071 patent.

71.    A judicial declaration is necessary and appropriate so that Verifone may ascertain its rights regarding the '071 patent, including its rights to manufacture, use, offer to sell, sell, and/or import the Accused Products.

72.    Verifone is entitled to a declaration that it has not and does not infringe any claim of the '071 patent. Accordingly, Verifone requests a judgment declaring that the claims of the '071 patent are not infringed by any of the Accused Products as NFE alleges.

---

[6] Each of NFE's "Exhibit[s] B-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '071 patent.

73.     Absent a declaration that Verifone does not infringe the '071 patent, NFE will continue to wrongfully assert the '071 patent against Verifone customers and the Accused Products and thereby cause Verifone irreparable harm and injury.

## COUNT III

### (Declaratory Judgment of Non-Infringement of the '350 Patent)

74.     Verifone restates and realleges the allegations set forth in paragraphs 1 through 73 above and incorporates them herein by reference.

75.     In the Verifone Customer Lawsuits, NFE asserted that the Accused Products infringe at least claim 10 of the '350 patent. Thus, there is an actual controversy between Verifone and NFE as to Verifone's alleged infringement of the '350 patent.

76.     None of the Accused Products infringe or have infringed any of the claims of the '350 patent.

77.     Verifone has not infringed any claim of the '350 patent, directly or indirectly, literally or under the doctrine of equivalents, by manufacturing, providing, supplying, using, distributing, selling, offering to sell, and/or importing the Accused Products.

78.     None of Verifone's employees, contractors, agents, customers, or any other entity or individual associated with Verifone has ever used any of the Accused Products in a manner that infringes any claim of the '350 patent.

79.     Exemplary Claim 10 of the '350 patent recites:

| Limitation | Claim Language |
| --- | --- |
| 10 [Preamble] | A method for configuring an interface controller, comprising: |
| 10[a] | receiving a configuration request from a host requesting particular structure and characteristics of one or more endpoints; |
| 10[b] | forwarding the configuration request to a device processor coupled to the host; |
| 10[c] | receiving configuration values back from the device processor associated with the configuration request; and |

| 10[d] | using the selected configuration parameters to configure the interface controller. |
| --- | --- |

80.    By way of example, the Accused Products do not satisfy at least limitations 10[a], 10[b], and 10[c] of Claim 10 of the '350 patent. The PN512 of the Accused Products does not receive a configuration request from a host requesting particular a structure and characteristics of one or more endpoints, in contrast to limitation 10[a] of Claim 10. In its claim charts, NFE cites to logic levels applied to control pins of an interface control of the PN512 as configuration requests. *See, e.g.*, Exhibit 7 at page 28, Exhibit 9 at page 29, Exhibit 11 at page 29, Exhibit 13 at page 28, Exhibit 15 at page 29, Exhibit 17 at page 35, Exhibit 19 at page 32, Exhibit 21 at page 30, Exhibit 23 at page 32, and Exhibit 25 at page 32.[7] However, these logic levels are used to set the communication protocol of the PN512. These logic levels do not request structure or characteristics regarding the PN512 or any other endpoints.

81.    Similarly, the PN512 does not forward the configuration request to a device processor coupled to the host, in contrast to limitation 10[b] of Claim 10. In its claim charts, NFE alleges that the interface control of the PN512 forwards a configuration request to a state machine via a buffer. *See, e.g.*, Exhibit 7 at page 30, Exhibit 9 at page 31, Exhibit 11 at page 31, Exhibit 13 at page 30, Exhibit 15 at page 31, Exhibit 17 at page 37, Exhibit 19 at page 34, Exhibit 21 at page 32, Exhibit 23 at page 34, and Exhibit 25 at page 34.[8] However, as described above, the interface control of the PN512 does not receive configuration requests to forward to a device processor. Further, the logic levels used to configure the interface control are not forwarded to either the state machine or the buffer of the PN512.

---

[7] Each of NFE's "Exhibit[s] C-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '350 patent.
[8] Each of NFE's "Exhibit[s] C-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '350 patent.

82.    Further, the PN512 does not receive configuration values back from a device processor associated with the configuration request, in contrast to limitation 10[c] of Claim 10. In its claim charts, NFE alleges that the state machine of the PN512 sends configuration values to the interface control to configure the interface control according to different protocols. *See*, *e.g.*, Exhibit 7 at page 28, Exhibit 9 at page 29, Exhibit 11 at page 29, Exhibit 13 at page 28, Exhibit 15 at page 29, Exhibit 17 at page 35, Exhibit 19 at page 32, Exhibit 21 at page 30, Exhibit 23 at page 32, and Exhibit 25 at page 32. However, the state machine of the PN512 does not configure the interface control according to different protocols. Instead, the interface control is configured by the logic levels applied to the control pins of the PN512 as described above.

83.    All the claims of the '350 patent either recite a limitation corresponding to or similar to limitations 10[a], 10[b], and 10[c] of Claim 10, or depend from a claim that recites this limitation. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '350 patent for at least the same reason described above for Claim 10.

84.    Further exemplary Claim 21 of the '350 patent recites:

| Limitation | Claim Language |
|---|---|
| 21 [Preamble] | A configurable Universal Serial Bus (USB) interface controller, comprising: |
| 21[a] | configuration circuitry generated from at least one configuration package containing configuration parameters for different endpoints, and the configuration circuitry used for configuring the interface controller for the different endpoint characteristics or structures; an |
| 21[b] | wherein substantially a same hardware description language (HDL) version of the interface controller is used for generating different logic and register configuration for the different endpoint characteristics or structures by varying configuration parameters in the configuration package. |

85.    By way of example, the Accused Products do not satisfy at least limitations 21[Preamble], 21[a], and 21[b] of Claim 210 of the '350 patent. As an initial matter, the PN512 of

the Accused Products is not and does not include a USB interface controller. Further, the PN512 does not generate configuration circuitry from configuration packages containing configuration parameters for different endpoints. Instead, the interface control of the PN512 is configured by the logic levels applied to the control pins of the PN512.

86.     All the claims of the '350 patent either recite a limitation corresponding to or similar to limitations 21[Preamble], 21[a], and 21[b] of Claim 21, or depend from a claim that recites this limitation. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '350 patent for at least the same reason described above for Claim 21.

87.     Based on the foregoing, an actual controversy has arisen and now exists between Verifone and NFE regarding Verifone's alleged infringement of the '350 patent that warrants issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that Verifone has not infringed any claim of the '350 patent.

88.     A judicial declaration is necessary and appropriate so that Verifone may ascertain its rights regarding the '350 patent, including its rights to manufacture, use, offer to sell, sell, and/or import the Accused Products.

89.     Verifone is entitled to a declaration that it has not and does not infringe any claim of the '350 patent. Accordingly, Verifone requests a judgment declaring that the claims of the '350 patent are not infringed by any of the Accused Products as NFE alleges.

90.     Absent a declaration that Verifone does not infringe the '350 patent, NFE will continue to wrongfully assert the '350 patent against Verifone customers and the Accused Products and thereby cause Verifone irreparable harm and injury.

## COUNT IV

### (Declaratory Judgment of Non-Infringement of the '727 Patent)

91.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 90 above and incorporates them herein by reference.

92.    In the Verifone Customer Lawsuits, NFE asserted that the Accused Products infringe at least claim 18 of the '727 patent. Thus, there is an actual controversy between Verifone and NFE as to Verifone's alleged infringement of the '727 patent.

93.    None of the Accused Products infringe or have infringed any of the claims of the '727 patent.

94.    Verifone has not infringed any claim of the '727 patent, directly or indirectly, literally or under the doctrine of equivalents, by manufacturing, providing, supplying, using, distributing, selling, offering to sell, and/or importing the Accused Products.

95.    None of Verifone's employees, contractors, agents, customers, or any other entity or individual associated with Verifone has ever used any of the Accused Products in a manner that infringes any claim of the '727 patent.

96.    Exemplary Claim 17 of the '727 patent recites:

| Limitation | Claim Language |
|---|---|
| 17 [Preamble] | 17. An apparatus comprising: |
| 17[a] | means for generating a voltage; and |
| 17[b] | means for (i) reducing current consumption in a first mode when said voltage comprises a power down voltage level and (ii) not reducing current consumption in a second mode when said voltage comprises a standard voltage level, wherein (i) programmable resistor pulls up a pullup resistor on a bus external to said voltage generating means when in said first mode and (ii) said programmable resistor is controlled by a register loaded from a nonvolatile memory. |

97.     By way of example, the Accused Products do not satisfy at least limitations 17[b] of the '727 patent. The PN512 of the Accused Products does not reduce current consumption in a first mode based on a voltage generated by the PN512, in contrast to limitation 17[b] of Claim 17. In its claim charts, NFE identifies the voltage present at the TX1 and TX2 pins of the PN512 as the generated voltage. *See*, *e.g.*, Exhibit 7 at pages 41-42, Exhibit 9 at pages 42-43, Exhibit 11 at pages 42-43, Exhibit 13 at pages 41-42, Exhibit 15 at pages 42-43, Exhibit 17 at pages 50-51, Exhibit 19 at pages 45-46, Exhibit 21 at page 43, Exhibit 23 at page 45, and Exhibit 25 at pages 45-46.[9] NFE then identifies various registers which may be used to regulate current consumption. *See*, *e.g.*, Exhibit 7 at pages 43-44, Exhibit 9 at pages 44-45, Exhibit 11 at pages 44-45, Exhibit 13 at pages 43-44, Exhibit 15 at pages 44-45, Exhibit 17 at pages 52-53, Exhibit 19 at pages 47-48, Exhibit 21 at pages 45, Exhibit 23 at pages 47, and Exhibit 25 at pages 47-48.[10] However, NFE fails to identify a particular power down voltage level at the TX1 and TX2 pins that causes the PN512 to enter a first mode and reduce current consumption.

98.     Similarly, the PN512 of the Accused Products is not configured to not reduce current consumption in a second mode based on the voltage generated by the PN512, in contrast to limitation 17[b] of Claim 17. In its claim charts, NFE refers to current consumption levels during normal operation of the PN512. *See*, *e.g.*, Exhibit 7 at page 45, Exhibit 9 at page 46, Exhibit 11 at page 46, Exhibit 13 at page 45, Exhibit 15 at page 46, Exhibit 17 at page 54, Exhibit 19 at page 49, Exhibit 21 at page 46, Exhibit 23 at page 48, and Exhibit 25 at page 49.[11] However, NFE fails

---

[9] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.
[10] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.
[11] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.

to identify a particular standard voltage level at the TX1 and TX2 pins that causes the PN512 to enter a second mode and not reduce current consumption.

99.     Additionally, the Accused Products do not implement a pull-up resistor on a bus external to the PN512 such that a programmable resistor of the PN512 pulls up the pull-up resistor, in contrast to limitation 17[b] of Claim 17. In its claim charts, NFE fails to identify any pull-up resistors on a bus external to the PN512.

100.    Further, there is no nonvolatile memory inside of the PN512 of the Accused Products, in contrast to limitation 17[b] of Claim 17. In its claim charts, NFE refers to certain registers of as configuring the output conductance of the amplifiers at the TX1 and TX2 pins. *See*, *e.g.*, Exhibit 7 at pages 43-44, Exhibit 9 at pages 44-45, Exhibit 11 at pages 44-45, Exhibit 13 at pages 43-44, Exhibit 15 at pages 44-45, Exhibit 17 at pages 52-53, Exhibit 19 at pages 47-48, Exhibit 21 at pages 45, Exhibit 23 at pages 47, and Exhibit 25 at pages 47-48.[12] The cited registers are not stored in or loaded from a nonvolatile memory. Accordingly, any values associated with the cited registers are erased when the PN512 is turned off.

101.    Further exemplary Claim 18 of the '727 patent recites:

| Limitation | Claim Language |
| --- | --- |
| 18 [Preamble] | A method for supplying a voltage level comprising the steps of: |
| 18[a] | (A) generating a voltage; |
| 18[b] | (B) reducing current consumption in a first mode when said voltage comprises a power down voltage level; |
| 18[c] | (C) not reducing current consumption in a second mode when said voltage comprises a standard voltage level; and |
| 18[d] | (D) pulling up a pullup resistor on a bus external to said power supply device using and a programmable resistor when in said first mode and said programmable resistor is controlled by a register loaded from a nonvolatile memory. |

---

[12] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.

102.    By way of example, the Accused Products do not satisfy at least limitations 18[b], 18[c] and 18[d] of the '727 patent. The PN512 of the Accused Products does not reduce current consumption in a first mode based on a voltage generated by the PN512, in contrast to limitation 18[b] of Claim 18. In its claim charts, NFE identifies the voltage present at the TX1 and TX2 pins of the PN512 as the generated voltage. *See*, *e.g.*, Exhibit 7 at pages 41-42, Exhibit 9 at pages 42-43, Exhibit 11 at pages 42-43, Exhibit 13 at pages 41-42, Exhibit 15 at pages 42-43, Exhibit 17 at pages 50-51, Exhibit 19 at pages 45-46, Exhibit 21 at page 43, Exhibit 23 at page 45, and Exhibit 25 at pages 45-46.[13] NFE then identifies various registers which may be used to regulate current consumption. *See*, *e.g.*, Exhibit 7 at pages 43-44, Exhibit 9 at pages 44-45, Exhibit 11 at pages 44-45, Exhibit 13 at pages 43-44, Exhibit 15 at pages 44-45, Exhibit 17 at pages 52-53, Exhibit 19 at pages 47-48, Exhibit 21 at pages 45, Exhibit 23 at pages 47, and Exhibit 25 at pages 47-48.[14] However, NFE fails to identify a particular power down voltage level at the TX1 and TX2 pins that causes the PN512 to enter a first mode and reduce current consumption.

103.    Similarly, the PN512 of the Accused Products is not configured to not reduce current consumption in a second mode based on the voltage generated by the PN512, in contrast to limitation 18[c] of Claim 18. In its claim charts, NFE refers to current consumption levels during normal operation of the PN512. *See*, *e.g.*, Exhibit 7 at page 45, Exhibit 9 at page 46, Exhibit 11 at page 46, Exhibit 13 at page 45, Exhibit 15 at page 46, Exhibit 17 at page 54, Exhibit 19 at page 49, Exhibit 21 at page 46, Exhibit 23 at page 48, and Exhibit 25 at page 49.[15] However, NFE fails

---

[13] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.
[14] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.
[15] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.

to identify a particular standard voltage level at the TX1 and TX2 pins that causes the PN512 to enter a second mode and not reduce current consumption.

104.    Additionally, the Accused Products do not implement a pull-up resistor on a bus external to the PN512 such that a programmable resistor of the PN512 pulls up the pull-up resistor, in contrast to limitation 18[d] of Claim 18. In its claim charts, NFE fails to identify any pull-up resistors on a bus external to the PN512.

105.    Further, there is no nonvolatile memory inside of the PN512 of the Accused Products, in contrast to limitation 18[d] of Claim 18. In its claim charts, NFE refers to certain registers of as configuring the output conductance of the amplifiers at the TX1 and TX2 pins. *See*, *e.g.*, Exhibit 7 at pages 43-44, Exhibit 9 at pages 44-45, Exhibit 11 at pages 44-45, Exhibit 13 at pages 43-44, Exhibit 15 at pages 44-45, Exhibit 17 at pages 52-53, Exhibit 19 at pages 47-48, Exhibit 21 at pages 45, Exhibit 23 at pages 47, and Exhibit 25 at pages 47-48.[16] The cited registers are not stored in or loaded from a nonvolatile memory. Accordingly, any values associated with the cited registers are erased when the PN512 is turned off.

106.    All the claims of the '727 patent either recite a limitation corresponding to or similar to limitations 18[b], 18[c], and 18[d] of Claim 18, or depend from a claim that recites this limitation. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '727 patent for at least the same reason described above for Claim 18.

107.    Based on the foregoing, an actual controversy has arisen and now exists between Verifone and NFE regarding Verifone's alleged infringement of the '727 patent that warrants

---

[16] Each of NFE's "Exhibit[s] D-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '727 patent.

issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that Verifone has not infringed any claim of the '727 patent.

108.    A judicial declaration is necessary and appropriate so that Verifone may ascertain its rights regarding the '727 patent, including its rights to manufacture, use, offer to sell, sell, and/or import the Accused Products.

109.    Verifone is entitled to a declaration that it has not and does not infringe any claim of the '727 patent. Accordingly, Verifone requests a judgment declaring that the claims of the '727 patent are not infringed by any of the Accused Products as NFE alleges.

110.    Absent a declaration that Verifone does not infringe the '727 patent, NFE will continue to wrongfully assert the '727 patent against Verifone customers and the Accused Products and thereby cause Verifone irreparable harm and injury.

## COUNT V

### (Declaratory Judgment of Non-Infringement of the '531 Patent)

111.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 110 above and incorporates them herein by reference.

112.    In the Verifone Customer Lawsuits, NFE asserted that the Accused Products infringe at least claim 2 of the '531 patent. Thus, there is an actual controversy between Verifone and NFE as to Verifone's alleged infringement of the '531 patent.

113.    None of the Accused Products infringe or have infringed any of the claims of the '531 patent.

114.    Verifone has not infringed any claim of the '531 patent, directly or indirectly, literally or under the doctrine of equivalents, by manufacturing, providing, supplying, using, distributing, selling, offering to sell, and/or importing the Accused Products.

115.    None of Verifone's employees, contractors, agents, customers, or any other entity or individual associated with Verifone has ever used any of the Accused Products in a manner that infringes any claim of the '531 patent.

116.    Exemplary Claim 2 of the '531 patent recites:

| Limitation | Claim Language |
|---|---|
| 2 [Preamble] | A signal detection method comprising the steps of: |
| 2[a] | detecting a through current flowing through a circuit to which a signal is inputted from an input terminal; |
| 2[b] | determining that the signal is in a first state in which the signal repeatedly goes to a high level and a low level alternately when the through current is detected; and |
| 2[c] | determining that the signal is in a second state in which the signal is kept at one of a high level and a low level when the through current is not detected in a predetermined period of time. |

117.    By way of example, the Accused Products do not satisfy at least limitations 2[a], 2[b], and 2[c] of the '531 patent. The PN512 of the Accused Products does not detect a through current flowing through the PN512. Nor does the PN512 use detection of a through current to determine if an input signal is in a first state or a second state. In its claim charts, NFE alleges that an I-channel demodulator, a Q-channel demodulator, an I-channel amplifier, a Q-channel amplifier, and an analog to digital converter of the PN512 are used to detect a through current caused by modulations in an RF field. *See*, *e.g.*, Exhibit 7 at pages 53-54, Exhibit 9 at pages 55-56, Exhibit 11 at pages 54-55, Exhibit 13 at pages 53-54, Exhibit 15 at pages 54-55, Exhibit 17 at pages 64-65, Exhibit 19 at pages 57-58, Exhibit 21 at pages 54-55, Exhibit 23 at pages 56-57, and Exhibit 25 at pages 57-58.[17] In contrast to the allegations of the claim charts, the PN512 uses an RF level

---

[17] Each of NFE's "Exhibit[s] E-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '531 patent.

detector circuit implementing a voltage comparator to evaluate voltage at the RX pin. The RF level

detector does not detect a through current caused by modulation in an RF field.

118.    All the claims of the '531 patent either recite a limitation corresponding to or

similar to limitations 2[a], 2[b], and 2[c] of Claim 2, or depend from a claim that recites this

limitation. Dependent claims cannot be infringed if the independent claim from which they depend

is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '531

patent for at least the same reason described above for Claim 2.

119.    Further exemplary Claim 7 of the '531 patent recites:

| Limitation | Claim Language |
|---|---|
| 7 [Preamble] | A signal detecting device comprising |
| 7[a] | a detector for detecting a through current flowing through a circuit to which a signal is inputted from an input terminal, wherein |
| 7[b] | the signal detecting device determines that the signal is in a first state in which the signal repeatedly goes to a high level and a low level alternately when the detector detects the through current, and |
| 7[b] | determines that the signal is in a second state in which the signal is kept at one of a high level and a low level when the detector does not detect the through current in a predetermined period of time. |

120.    By way of example, the Accused Products do not satisfy at least limitations 7[a],

7[b], and 7[c] of the '531 patent. The PN512 of the Accused Products does not detect a through

current flowing through the PN512. Nor does the PN512 use detection of a through current to

determine if an input signal is in a first state or a second state. In its claim charts, NFE alleges that

an I-channel demodulator, a Q-channel demodulator, an I-channel amplifier, a Q-channel amplifier,

and an analog to digital converter of the PN512 are used to detect a through current caused by

modulations in an RF field. *See*, *e.g.*, Exhibit 7 at pages 53-54, Exhibit 9 at pages 55-56, Exhibit

11 at pages 54-55, Exhibit 13 at pages 53-54, Exhibit 15 at pages 54-55, Exhibit 17 at pages 64-

65, Exhibit 19 at pages 57-58, Exhibit 21 at pages 54-55, Exhibit 23 at pages 56-57, and Exhibit

25 at pages 57-58.[18] In contrast to the allegations of the claim charts, the PN512 uses an RF level detector circuit implementing a voltage comparator to evaluate voltage at the RX pin. The RF level detector does not detect a through current caused by modulation in an RF field.

121.    All the claims of the '531 patent either recite a limitation corresponding to or similar to limitations 7[a], 7[b], and 7[c] of Claim 7, or depend from a claim that recites this limitation. Dependent claims cannot be infringed if the independent claim from which they depend is not infringed. Therefore, Verifone does not infringe and has not infringed any claim of the '531 patent for at least the same reason described above for Claim 7.

122.    Based on the foregoing, an actual controversy has arisen and now exists between Verifone and NFE regarding Verifone's alleged infringement of the '531 patent that warrants issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that Verifone has not infringed any claim of the '531 patent.

123.    A judicial declaration is necessary and appropriate so that Verifone may ascertain its rights regarding the '531 patent, including its rights to manufacture, use, offer to sell, sell, and/or import the Accused Products.

124.    Verifone is entitled to a declaration that it has not and does not infringe any claim of the '531 patent. Accordingly, Verifone requests a judgment declaring that the claims of the '531 patent are not infringed by any of the Accused Products as NFE alleges.

125.    Absent a declaration that Verifone does not infringe the '531 patent, NFE will continue to wrongfully assert the '531 patent against Verifone customers and the Accused Products and thereby cause Verifone irreparable harm and injury.

---

[18] Each of NFE's "Exhibit[s] E-1" to each of the Verifone Customer Lawsuits are NFE's claim charts for the '531 patent.

## COUNT VI

### (Declaratory Judgment of Invalidity of the '201 Patent)

126.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 125 above and incorporates them herein by reference.

127.    An actual case or controversy exists between Verifone and NFE with respect to the validity of the '201 patent, and the controversy is ripe for adjudication.

128.    One or more claims of the '201 patent fail to meet one or more of the conditions of patentability, or to otherwise satisfy the requirements set forth in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

129.    Claim 13 of the '201 patent is anticipated and/or obviated by at least U.S. Patent No. 6,038,400 ("*Bell*"). A copy of *Bell* is attached as Exhibit 26.

130.    For example, *Bell* discloses an apparatus comprising: means for detecting a signaling protocol of a connected bus protocols (*see, e.g.,* Exhibit 26 at 5:2-9, 5:67-6:2, 9:64-67, and FIG. 1); means for communicating in a plurality of signaling protocols (*see, e.g.,* Exhibit 26 at 4:51-54, 5:2-9, 5:63-67, 9:64-67, 11:53-63, and FIG. 1); and means for automatically configuring said communication means to one of said plurality of signaling protocols in response to said detected signaling protocol of said connected bus, wherein (i) said detecting means, communicating means, and configuring means comprise a single integrated circuit package and (ii) each of said selected protocols operate over said connected bus through a single set of pins (*see, e.g.,* Exhibit 26 at 4:51-54, 5:61:6-3, 11:53-63, and FIG. 1).

131.    Claim 13 of the '201 patent is indefinite because, for example, the term "said selected protocols" lacks antecedent basis. Claim 13 does not describe how the "selected

protocols" are selected, nor how the "selected protocols" differ from the plurality of signaling protocols recited in the claim.

132.    Claim 13 of the '201 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to detecting and communicating signals and configuring a means for communicating said signals, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

133.    Claim 14 of the '201 patent is anticipated and/or obviated by at least *Bell*.

134.    For example, *Bell* discloses a method for automatically selecting a signaling protocol for communicating with a host (*see, e.g.,* Exhibit 26 at 5:2-9, 5:63-6:2, 11:53-63, and FIG. 1) comprising the steps of: (A) detecting a signaling protocol of a bus connected to an integrated circuit that operates in a plurality of signaling protocols (*see, e.g.,* Exhibit 26 at 5:2-9, 5:67-6:2, 9:64-67, and FIG. 1); and (B) configuring said integrated circuit to communicate in one of said plurality of signaling protocols in response to said detected signaling protocol of said connected bus, wherein each of said selected protocols operate over said connected bus through a single set of pins (*see, e.g.,* Exhibit 26 at 4:51-54, 5:63-67, 11:53-63, and FIG. 1).

135.    Claim 14 of the '201 patent is indefinite because, for example, the term "said selected protocols" lacks antecedent basis. Claim 14 does not describe how the "selected protocols" are selected, nor how the "selected protocols" differ from the plurality of signaling protocols recited in the claim.

136.    Claim 14 of the '201 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to detecting signals and configuring a

means for communicating said signals, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

137.    Verifone's investigation into the invalidity of the '201 patent is ongoing. Verifone reserves the right to make additional contentions regarding the invalidity of the '201 patent consistent with the Federal Rules of Civil Procedure and any schedule entered in this action.

138.    Absent a determination of invalidity, NFE will continue to assert the '201 patent against Verifone's customers, and thereby cause Verifone to suffer irreparable injury and damage.

139.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and 35 U.S.C. § 100 et seq., Verifone requests a declaration by the Court that the claims of each of the '201 patent are invalid.

## COUNT VII

### (Declaratory Judgment of Invalidity of the '071 Patent)

140.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 139 above and incorporates them herein by reference.

141.    An actual case or controversy exists between Verifone and NFE with respect to the validity of the '071 patent, and the controversy is ripe for adjudication.

142.    One or more claims of the '071 patent fail to meet one or more of the conditions of patentability, or to otherwise satisfy the requirements set forth in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

143.    Claim 9 of the '071 patent is anticipated and/or obviated by at least U.S. Patent No. 5,822,550 ("*Milhaupt*"). A copy of *Milhaupt* is attached as Exhibit 27.

144.    For example, *Milhaupt* discloses a circuit comprising: a memory configured to generate a plurality of first control signals in response to a state signal (*see, e.g.,* Exhibit 27 at 28:1-30:22, and FIGS. 22 and 23); a first circuit configured to generate a second control signal in response to at least one of a read signal and a write signal; (*see, e.g.,* Exhibit 27 at 28:1-30:22, and FIGS. 22-24) and an interface circuit configured to (i) interface to an external bus, (ii) drive at least one output control signal of said first control signals to said external bus, (iii) generate said state signal conveying one of a plurality of states in response to (a) at least one internal control signal of said first control signals, (b) said second control signal and (c) an input signal received from said external bus and (iv) generate a signal in response to at least one of said first control signals (*see, e.g.,* Exhibit 27 at 28:1-30:22, and FIGS. 21-24).

145.    Claim 9 of the '071 Patent is not enabled at least because of a lack of written description of the term "external bus" in the specification of the '071 patent.

146.    Claim 9 of the '071 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to configuring, generating, and driving various signals, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

147.    Claim 15 of the '071 patent is anticipated and/or obviated by at least *Milhaupt*.

148.    For example, *Milhaupt* discloses a method for providing an interface to an external bus (*see, e.g.,* Exhibit 27 at 2:14-21, 15:41-65, and FIG. 11), comprising the steps of: (A) generating a plurality of first control signals in response to a current state of a processor (*see, e.g.,* Exhibit 27 at 28:1-30:22, and FIGS. 22 and 23); (B) progressing to a next state based on said current state, at least one internal control signal of said first control signals and an input signal received from said external bus (*see* Exhibit 27 at 28:1-30:22, and FIGS. 22-24); (C) driving at

least one output control signal of said first controls signals onto said external bus (*see, e.g.,* Exhibit 27 at 29:46-49, and FIGS. 21-23); and (D) updating said current state to said next state (*see, e.g.,* Exhibit 27 at 28:1-30:22, and FIGS. 22-24).

149.    Claim 15 of the '071 Patent is not enabled at least because of a lack of written description of the term "external bus" in the specification of the '071 patent.

150.    Claim 15 of the '071 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to generating and driving various signals and progressing through various states of a generic processor, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

151.    Verifone's investigation into the invalidity of the '071 patent is ongoing. Verifone reserves the right to make additional contentions regarding the invalidity of the '071 patent consistent with the Federal Rules of Civil Procedure and any schedule entered in this action.

152.    Absent a determination of invalidity, NFE will continue to assert the '071 patent against Verifone's customers, and thereby cause Verifone to suffer irreparable injury and damage.

153.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and 35 U.S.C. § 100 et seq., Verifone requests a declaration by the Court that the claims of the '071 patent are invalid.

## COUNT VIII

### (Declaratory Judgment of Invalidity of the '350 Patent)

154.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 153 above and incorporates them herein by reference.

155.    An actual case or controversy exists between Verifone and NFE with respect to the validity of the '071 patent, and the controversy is ripe for adjudication.

156.    One or more claims of the '350 patent fail to meet one or more of the conditions of patentability, or to otherwise satisfy the requirements set forth in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

157.    Claim 10 of the '350 patent is anticipated and/or obviated by at least U.S. Patent No. 6,766,406 ("*Gasperini*"). A copy of *Gasperini* is attached as Exhibit 28.

158.    For example, *Gasperini* discloses a method for configuring an interface controller (*see, e.g.,* Exhibit 28 at 3:34-4:9 and FIG. 1), comprising: receiving a configuration request from a host requesting particular structure and characteristics of one or more endpoints (*see, e.g.,* Exhibit 28 at 5:34-44 and FIG. 2); forwarding the configuration request to a device processor coupled to the host (*see* Exhibit 28 at 8:1-9 and FIG. 2); receiving configuration values back from the device processor associated with the configuration request (*see, e.g.,* Exhibit 28 at 7:38-52 and FIG. 2); and using the selected configuration parameters to configure the interface controller (*see, e.g.,* Exhibit 28 at 5:34-44 and FIG. 2).

159.    Claim 10 of the '350 Patent is not enabled at least because of a lack of written description of the term "particular structure" of "one or more endpoints" in the specification of the '350 patent.

160.    Claim 10 of the '350 Patent is also indefinite because, for example, the term "the selected configuration parameters" lacks antecedent basis. Claim 10 does not describe how the "selected configuration parameters" are selected, nor does it recite a plurality of configuration parameters from which to choose the "selected configuration parameters."

161.    Claim 10 of the '350 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to receiving and forwarding various signals and configuring a generic controller, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

162.    Claim 21 of the '350 patent is anticipated and/or obviated by at least *Gasperini*.

163.    For example, *Gasperini* discloses a configurable Universal Serial Bus (USB) interface controller (*see, e.g.,* Exhibit 28 at 3:34-4:9 and FIG. 1), comprising: configuration circuitry generated from at least one configuration package containing configuration parameters for different endpoints, and the configuration circuitry used for configuring the interface controller for the different endpoint characteristics or structures (*see, e.g.,* Exhibit 28 at 5:34-44 and FIG. 2); wherein substantially a same hardware description language (HDL) version of the interface controller is used for generating different logic and register configuration for the different endpoint characteristics or structures by varying configuration parameters in the configuration package (*see, e.g.,* Exhibit 28 at 5:34-44, 6:30-41, and FIG. 2).

164.    Claim 21 of the '350 Patent is not enabled at least because of a lack of written description of the term "structures" for "the different endpoints" in the specification of the '350 patent.

165.    Claim 21 of the '350 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to generating various signals and configuring generic circuitry, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

166.    Verifone's investigation into the invalidity of the '350 patent is ongoing. Verifone reserves the right to make additional contentions regarding the invalidity of the '350 patent consistent with the Federal Rules of Civil Procedure and any schedule entered in this action.

167.    Absent a determination of invalidity, NFE will continue to assert the '350 patent against Verifone's customers, and thereby cause Verifone to suffer irreparable injury and damage.

168.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and 35 U.S.C. § 100 et seq., Verifone requests a declaration by the Court that the claims of the '350 patent are invalid.

## COUNT IX

### (Declaratory Judgment of Invalidity of the '727 Patent)

169.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 168 above and incorporates them herein by reference.

170.    An actual case or controversy exists between Verifone and NFE with respect to the validity of the '727 patent, and the controversy is ripe for adjudication.

171.    One or more claims of the '727 patent fail to meet one or more of the conditions of patentability, or to otherwise satisfy the requirements set forth in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

172.    Claim 17 of the '727 patent is anticipated and/or obviated by at least U.S. Patent No. 5,751,652 ("*Tomita*"). A copy of *Tomita* is attached as Exhibit 29.

173.    For example, *Tomita* discloses an apparatus comprising: means for generating a voltage (*see, e.g.,* Exhibit 29 at 3:33-39, 7:66-8:3, and FIGS. 1 and 5); and means for (i) reducing current consumption in a first mode when said voltage comprises a power down voltage level and

(ii) not reducing current consumption in a second mode when said voltage comprises a standard voltage level, wherein (i) programmable resistor pulls up a pullup resistor on a bus external to said voltage generating means when in said first mode and (ii) said programmable resistor is controlled by a register loaded from a nonvolatile memory (*see, e.g.,* Exhibit 29 at 5:47-6:2, 6:57-7:11, 11:26-35, and 11:36-44, and FIGS. 2, 3, and 5).

174.    Claim 17 of the '727 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to generating and controlling various signals according to different modes of operation, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

175.    Claim 18 of the '727 patent is anticipated and/or obviated by at least *Tomita*.

176.    For example, *Tomita* discloses a method for supplying a voltage level (Exhibit 29 at 3:33-39, 7:66-8:3, and FIGS. 1 and 5) comprising the steps of: (A) generating a voltage (*see, e.g.,* Exhibit 29 at 3:33-39, 7:66-8:3, and FIGS. 1 and 5); (B) reducing current consumption in a first mode when said voltage comprises a power down voltage level (Exhibit 29 at 11:36-44, and FIG. 3 and 5); (C) not reducing current consumption in a second mode when said voltage comprises a standard voltage level (*see, e.g.,* Exhibit 29 at 11:26-35, and FIG. 3 and 5); and (D) pulling up a pullup resistor on a bus external to said power supply device using and a programmable resistor when in said first mode and said programmable resistor is controlled by a register loaded from a nonvolatile memory (*see, e.g.,* Exhibit 29 at 5:47-6:2 and 6:57-7:11, and FIG. 2).

177.    Claim 18 of the '727 Patent is indefinite because, for example, the claim recites "pulling up a pullup resistor on a bus external to said power supply device *using and a* programmable resistor (emphasis added)," rendering this limitation unclear.

178.    Claim 18 of the '727 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to generating and controlling various signals according to different modes of operation, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

179.    Verifone's investigation into the invalidity of the '727 patent is ongoing. Verifone reserves the right to make additional contentions regarding the invalidity of the '727 patent consistent with the Federal Rules of Civil Procedure and any schedule entered in this action.

180.    Absent a determination of invalidity, NFE will continue to assert the '727 patent against Verifone's customers, and thereby cause Verifone to suffer irreparable injury and damage.

181.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and 35 U.S.C. § 100 et seq., Verifone requests a declaration by the Court that the claims of each of the '727 patent are invalid.

## COUNT X

### (Declaratory Judgment of Invalidity of the '531 Patent)

182.    Verifone restates and realleges the allegations set forth in paragraphs 1 through 181 above and incorporates them herein by reference.

183.    An actual case or controversy exists between Verifone and NFE with respect to the validity of the '531 patent, and the controversy is ripe for adjudication.

184.    One or more claims of the '531 patent fail to meet one or more of the conditions of patentability, or to otherwise satisfy the requirements set forth in Part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

185. Claim 2 of the '531 patent is anticipated and/or obviated by at least Japanese Patent Publication No. S61-164321 ("*Kobayashi*") and U.S. Patent No. 5,949,261 ("*Field*"). A copy of *Kobayashi* with a machine translation of the specification and claims is attached as Exhibit 30. A copy of *Field* is attached as Exhibit 31.

186. For example, *Kobayashi* discloses a signal detection method (*see, e.g.,* Exhibit 30 at paragraphs [0001] and [0003] and claim 1) comprising the steps of: detecting a through current flowing through a circuit to which a signal is inputted from an input terminal (*see, e.g.,* Exhibit 30 at paragraph [0001] and [0003], claim 1, and FIG. 1); determining that the signal is in a first state in which the signal repeatedly goes to a high level and a low level alternately when the through current is detected (*see, e.g.,* Exhibit 30 at paragraph [0001] and [0003], claim 1, and FIG. 2); and determining that the signal is in a second state in which the signal is kept at one of a high level and a low level when the through current is not detected in a predetermined period of time (*see, e.g.,* Exhibit 30 at paragraph [0001] and [0003], claim 1, and FIG. 2).

187. Further, *Field* discloses a signal detection method (*see, e.g.,* Exhibit 31 at 5:17-35 and 5:66-6:8 and FIGS. 1 and 2) comprising the steps of: detecting a through current flowing through a circuit to which a signal is inputted from an input terminal (*see, e.g.,* Exhibit 31 at 5:17-35 and 5:66-6:8 and FIGS. 1 and 2); determining that the signal is in a first state in which the signal repeatedly goes to a high level and a low level alternately when the through current is detected (*see, e.g.,* Exhibit 31 at 7:6-8:41 and FIGS. 3A-3E); and determining that the signal is in a second state in which the signal is kept at one of a high level and a low level when the through current is not detected in a predetermined period of time (*see, e.g.,* Exhibit 31 at 7:6-8:41 and FIGS. 3A-3E).

188. Claim 2 of the '531 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to detecting and determining a state of

various signals, concepts which are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

189.    Claim 7 of the '531 patent is anticipated and/or obviated by at least *Kobayashi* and *Field*.

190.    For example, *Kobayashi* discloses a signal detecting device (*see, e.g.,* Exhibit 30 at paragraphs [0001] and [0003] and claim 1) comprising a detector for detecting a through current flowing through a circuit to which a signal is inputted from an input terminal (*see, e.g.,* Exhibit 30 at paragraph [0001] and [0003], claim 1, and FIG. 1), wherein the signal detecting device determines that the signal is in a first state in which the signal repeatedly goes to a high level and a low level alternately when the detector detects the through current (*see, e.g.,* Exhibit 30 at paragraph [0001] and [0003], claim 1, and FIG. 2), and determines that the signal is in a second state in which the signal is kept at one of a high level and a low level when the detector does not detect the through current in a predetermined period of time (*see, e.g.,* Exhibit 30 at paragraph [0001] and [0003], claim 1, and FIG. 2).

191.    Further, *Field* discloses a signal detecting device (*see, e.g.,* Exhibit 31 at 5:17-35 and 5:66-6:8 and FIGS. 1 and 2) comprising a detector for detecting a through current flowing through a circuit to which a signal is inputted from an input terminal (*see, e.g.,* Exhibit 31 at 5:17-35 and 5:66-6:8 and FIGS. 1 and 2), wherein the signal detecting device determines that the signal is in a first state in which the signal repeatedly goes to a high level and a low level alternately when the detector detects the through current (*see, e.g.,* Exhibit 31 at 7:6-8:41 and FIGS. 3A-3E), and determines that the signal is in a second state in which the signal is kept at one of a high level and a low level when the detector does not detect the through current in a predetermined period of time (*see, e.g.,* Exhibit 31 at 7:6-8:41 and FIGS. 3A-3E).

192.    Claim 7 of the '531 patent is also invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. The claim is directed exclusively to detecting and determining a state of various signals, concepts which have are abstract. Any components recited in the claim are generic and defined in terms of the standard functions they perform.

193.    Additionally, at least claim 2 of the '531 patent is anticipated by the PN511 Transmission Module ("PN511") as disclosed, for example, in the Short Form Specification dated February 2004. The Short Form Specification for the PN511 is attached as Exhibit 32. The document itself evidenced that it was "published" and "changed to public" in February 2004:

**7   REVISION HISTORY**

| REVISION | DATE | DESCRIPTION |
|----------|------|-------------|
| 2.0 | February2004 | second published version, changed to public |
| 1.0 | March2003 | first published version |

*Table 7: Document Revision History*

194.    According to a contemporaneous article from the Electronic Engineering Times titled "Chip makers still uncertain of plunge into NFC -- Proprietary interface is one hurdle for vendors mulling Philips' Near Field Comms," (attached as Exhibit 33), the PN511 was offered for sale at least as early as 2004.

195.    As shown in the excerpts of Exhibit 32 below, the PN511 includes an integrated RF level detector. The integrated RF level detector is configured to detect the presence of an external RF field based on a signal received at an RX pin of the PN511.



(Exhibit 32 at page 5)

(Exhibit 32 at page 7)



*Figure 2-Pinning Diagram PN511*

(Exhibit 32 at page 8)

196.    The PN511 is the direct predecessor to the PN512 found in the Accused Products. Upon information and belief, the PN512 performs RF level detection in the same manner as the PN511.

197.    In its claim charts, NFE relies on the RF level detection functionality of the PN512 as performing the method steps of claim 2 of the '531 patent. *See*, *e.g.*, Exhibit 7, Exhibit 9, Exhibit 11, Exhibit 13, Exhibit 15, Exhibit 17, Exhibit 19, Exhibit 21, Exhibit 23, and Exhibit 25.

The Accused Instrumentalities perform the step of detecting a through current flowing through a circuit to which a signal is inputted from an input terminal.

In the Accused Instrumentalities, the RF Level Detector detects a through current caused by modulations in anRF-field, flowing through a circuit to which a signal is inputted from an input terminal (the RX pin).

The analog interface handles the modulation and demodulation of the analog signals according to the Card Receiving mode, Reader/Writer mode and NFCIP-1 mode communication scheme.

The RF level detector detects the presence of an external RF-field delivered by the antenna to the RX pin.

PN512 Product Data Sheet Rev. 5.3, 2020, Section 5 at 6.



PN512 Product Data Sheet Rev. 5.3, 2020, Figure 2 at 7.

(Exhibit 7 at pages 53-54)

198.    The exemplary excerpts shown above demonstrate that at least claim 2 of the '531 patent is invalid in view of the PN511.

199.    Upon information and belief, the PN511 prior art was not disclosed or considered by the U.S. Patent and Trademark Office during prosecution of the '531 patent.

200.    Upon information and belief, NFE's infringement allegations read directly on the PN511 prior art.

201.    Verifone's investigation into the invalidity of the '531 patent is ongoing. Verifone reserves the right to make additional contentions regarding the invalidity of the '531 patent consistent with the Federal Rules of Civil Procedure and any schedule entered in this action.

202.    Absent a determination of invalidity, NFE will continue to assert the '531 patent against Verifone's customers, and thereby cause Verifone to suffer irreparable injury and damage.

203.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and 35 U.S.C. § 100 et seq., Verifone requests a declaration by the Court that the claims of each of the '531 patent are invalid.

## PRAYER FOR RELIEF

WHEREFORE, Verifone prays for the following judgments and relief:

A.    An entry of judgment declaring that the claims of the Asserted Patents are not infringed by any of the Accused Products;

B.    An entry of judgment declaring that the claims of the Asserted Patents are invalid;

C.    An injunction against NFE, and all persons acting on its behalf or in concert with it, restraining them from further prosecuting or instituting any action alleging that any Verifone product, service, or technology, or others' use thereof, infringes any claim of any of the Asserted Patents;

D.    A declaration that this case is exceptional under 35 U.S.C. § 285;

E.    An award of Verifone's reasonable attorneys' fees, costs, and expenses incurred in this action under 35 U.S.C. § 285, any other federal statute, or common law; and

F.    An award of such other and further relief in law or in equity as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Verifone hereby demands a jury trial on all issues triable before a jury.

Dated: December 3, 2025

**OF COUNSEL:**

Jeremy P. Oczek*
Daniel R. Carosa*
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, NY 14202
Telephone: (716) 416.7000
Email: jpoczek@bsk.com
Email: dcarosa@bsk.com

David L. Nocilly*
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218.8500
Email: nocilld@bsk.com

*Motion for admission
*pro hac vice* forthcoming

 _/s/ Kenneth L. Dorsney_
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
kdorsney@morrisjames.com
chitch@morrisjames.com

**COUNSEL FOR PLAINTIFF
VERIFONE, INC.**